1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BERNARDOS GRAY, JR.,                    No.  2:12-cv-3006 KJM AC P

12              Plaintiff,

13        v.                                  ORDER AND

14    T. VIRGA, et al.,                       FINDINGS & RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, filed this action pursuant to 42 U.S. § 1983 on

18    December 9, 2012.[1]  ECF No. 1.  The court granted plaintiff's request to proceed in forma

19    pauperis on February 27, 2013.  ECF No. 6.  The complaint was found appropriate for service

20    upon the following defendants employed at California State Prison – Sacramento (CSP-Sac):

21    Warden T. Virga; Correctional Lieutenant M. Nielson; Correctional Sergeant S. Phelps;

22    Correctional Officers M. Starnes and N. Gam; and, Registered Nurse G. Wangombe.  Id.

23    I.    Complaint

24        Plaintiff raises two separate Eighth Amendment claims based on (1) prison officials'

25    failure to protect him from an inmate assault when he was housed in the Administrative

26    Segregation Unit (ASU) at CSP-Sacramento, and (2) their deliberate indifference to his medical

27    _____

28    [1] The filing date of the complaint was determined using the prison mailbox rule.  See Houston v.
      Lack, 487 U.S. 266 (1988).

                                  1

1   needs following the inmate attack.  ECF No. 1 at 1.  According to the allegations of the

2   complaint, defendant Nielson approved plaintiff's housing assignment with Inmate Williams in

3   the ASU even though Inmate Williams had been removed from general population due to

4   possessing two hand-made weapons.  Id. at 4.  On May 19, 2011, plaintiff alleges that defendants

5   Gam and Starnes failed to conduct the required search procedure before placing him into the same

6   cell as Inmate Williams.  Id. at 3.  Upon their entry into the same cell, both plaintiff and Inmate

7   Williams were handcuffed behind their backs.  Id.  Upon having his handcuffs removed by

8   defendant Gam, Inmate Williams immediately began stabbing plaintiff who was still handcuffed.

9   Id. at 4.  Defendant Gam then blinded plaintiff and not the aggressor with pepper spray while the

10  stabbing continued.  Id.  Defendant Starnes released a second stream of pepper spray into the cell.

11  Id.

12       Following this attack, plaintiff alleges that he was not provided any medical attention for

13  his wounds until he had been photographed and interrogated by correctional officers.  Id. at 5.

14  Once taken to the medical section, plaintiff alleges that Nurse Wangombe provided inadequate

15  medical care in that she failed to refer him to a doctor and failed to remove pepper spray from his

16  hair, body and lungs.  Id. at 5-6.  Defendant Phelps interrogated plaintiff while he was still having

17  a hard time breathing, was still bleeding, and was complaining that his handcuffs were too tight.

18  Id. at 7.  Without ever being examined by a doctor, plaintiff was dragged to a holding cell in the

19  medical center where he was left lying on the floor in shackles.  Id. at 8.  Plaintiff seeks

20  compensatory and punitive damages as well as declaratory and injunctive relief.  Id. at 9.

21  II.    Motion to Dismiss

22       Pending before the court is defendants' motion to dismiss under non-enumerated Rule

23  12(b) of the Federal Rules of Civil Procedure for failure to exhaust.  ECF Nos. 14, 17 (joinder by

24  defendant Starnes).  While the motion to dismiss also references Rule 12(b)(6) of the Federal

25  Rules of Civil Procedure for plaintiff's failure to state a claim upon which relief may be granted,

26  no separate argument on that ground is provided in the Memorandum of Points and Authorities.

27  Compare ECF No. 14 at 1 with ECF No. 14-2.  For that reason, the court's discussion will be

28  limited to the defendant's assertion that plaintiff failed to exhaust his administrative remedies

1  with respect to his Eighth Amendment claims.  The motion has been fully briefed.  ECF Nos. 23

2  (opposition), 26 (reply), 30 (sur-reply), 35 (motion to strike sur-reply).

3        In the motion, defendants assert that the complaint should be dismissed in its entirety

4  because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation

5  Reform Act (PLRA).  Defendants contend that plaintiff's only properly submitted administrative

6  grievance was limited to the medical care issue, and was not reviewed at the Director's Level as

7  required for exhaustion.  Defendants contend that plaintiff did not properly file any administrative

8  grievance regarding the actions of defendants Virga, Gam, Nielson, and Phelps, rendering his

9  claims against those defendants also unexhausted.

10 A.    The Exhaustion Requirement

11        Pursuant to the Prison Litigation Reform Act ("PLRA"):

12              No action shall be brought with respect to prison conditions under
                section 1983 of this title, or any other Federal law, by a prisoner
13              confined in a jail, prison, or other correctional facility until such
                administrative remedies as are available are exhausted.
14

15 42 U.S.C. § 1997e (a); see also Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009); Brown v.

16 Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v. Nussle, 534 U.S. 516, 525 n.4 (2002)

17 (The PLRA "creates 'a general rule of exhaustion' for prisoner civil rights cases.").

18        Compliance with the exhaustion requirement is mandatory for any type of relief sought.

19 Booth v. Churner, 532 U.S. 731, 739, 741 (2001) (holding that prisoners must exhaust their

20 administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money

21 damages, even though the latter is unavailable pursuant to the administrative grievance process);

22 McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); accord Jones v. Bock, 549

23 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and

24 that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las

25 Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that

26 the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought

27 first in an available administrative grievance procedure.").

28        An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion

3

1 requirement.  Woodford v. Ngo, 548 U.S. 81, 84 (2006).  When an inmate's administrative

2 grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as

3 "effectively unavailable."  Sapp v. Kimbrell, 623 F. 3d 813, 823 (9th Cir. 2010); see also Nunez

4 v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's

5 administrative remedies "effectively unavailable");  Ward v. Chavez, 678 F.3d 1042, 1045 (9th

6 Cir. 2012) (exhaustion excused where futile);  Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005)

7 (plaintiff not required to proceed to third level where appeal granted at second level and no

8 further relief was available).

9   Administrative remedies must be exhausted before the complaint is filed.  McKinney v.

10 Carey, 311 F.3d 1198 (9th Cir. 2002), but see Rhodes v. Robinson, 621 F.3d 1002 (9th Cir. 2010)

11 (PLRA exhaustion requirement satisfied with respect to new claims within an amended or

12 supplemental complaint so long as administrative remedies are exhausted prior to the filing of the

13 amended or supplemental complaint).

14   The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an affirmative

15 defense that a defendant may raise in an unenumerated Rule 12(b) motion.  See Jones, 549 U.S. at

16 213–14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003).

17 The defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315

18 F.3d at 1119.

19 B.   Standards Governing the Motion

20   In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the

21 pleadings and decide disputed issues of fact."  Id., 315 F.3d at 1119–20.  Thus, the parties may go

22 outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff

23 must be provided with notice of his opportunity to develop a record.  Id. at 1120 n.14.  In this

24 case, plaintiff was provided with such notice on April 2, 2013 and concurrently with the filing of

25 the motion to dismiss on June 24, 2013.  See ECF Nos. 10 at 3-4,14-1.  See Woods v. Carey, 684

26 F.3d 934 (9th Cir. 2012).  If the court determines that plaintiff has failed to exhaust, dismissal

27 without prejudice is the appropriate remedy.  Id. at 1120.

28 ////

C.     The CDCR's Administrative Remedies

The State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Following amendments that took effect January 28, 2011, California prisoners are required to proceed through three levels of appeal to exhaust the administrative appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR.  See 15 Cal. Code Regs. § 3084.1- 3084.9.[2]  A final decision from the Director's level of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a).  See Lira v. Herrera, 427 F.3d 1164, 1166–67 (9th Cir. 2005); see also Cal. Code Regs. tit. 15, § 3084.7(d)(3) (as amended Dec. 13, 2010).  Specific time limits apply to the processing of each administrative appeal.  See Cal. Code Regs. tit. 15, § 3084.8.  Absent any specific exceptions, the first and second level administrative responses are required to be completed "within 30 working days from [the] date of receipt by the appeals coordinator."  Id.  Likewise, a third level response is due within 60 working days from the date the appeal is received by the appeals chief.  Id.

However, appeals concerning staff complaints are processed differently.  California Code of Regulations Title 15, § 3084.5(b)(4) states:

> When an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i) ..., to determine whether it shall be:
>
> (A) Processed as a routine appeal but not as a staff complaint.
>
> (B) Processed as a staff complaint appeal inquiry.

---

[2] The informal resolution level was eliminated.  See Cal. Code Regs. tit. 15, § 3084.7 (as amended Dec. 13, 2010).

1          (C) Referred to Internal Affairs for an investigation/inquiry.

2 An inmate appeal alleging staff misconduct must be accompanied by a Rights and Responsibility

3 Statement.  Id. § 3084.9(i).  "All appeals alleging staff misconduct will be presented by the

4 appeals coordinator to the hiring authority or designee within five working days."  Id. §

5 3084.9(i)(3).  "Only after the appeal has been reviewed and categorized as a staff complaint by

6 the hiring authority or designee shall it be processed as a staff complaint."  Id. § 3084.9(i)(1).

7 When an appeal that is classified and accepted as a staff complaint includes other non-related

8 issues, "the appeals coordinator shall notify the inmate that any other appeal issue(s) may only be

9 appealed separately and therefore resubmission of those issues is required if the intention is to

10 seek resolution of such matters."  Id. § 3084.9(i)(2); see also id. § 3084.5(b)(5).  Processing an

11 appeal as a staff complaint does not preclude a prisoner from exhausting administrative appeals to

12 the Director's Level.  Cal. Code Regs. tit. 15, § 3084.1(b).

13    D.     Defendants' Evidence

14        Defendants produced the affidavits of J.D. Lozano, the Chief of the Office of Appeals of

15 the CDCR, as well as that of A. Briones, the health care appeals coordinator at CSP-Sacramento.

16 See ECF Nos. 14-3, 14-4.  The Lozano affidavit describes the various levels of non-health care

17 related administrative appeals available for California inmates, with the last level being that of the

18 Office of Appeals ("OOA").  ECF No. 14-3.  According to Lozano, the "OOA's records disclose

19 that inmate Bernardos Gray (P-46538) did not file any appeals that were accepted by the OOA

20 claiming prison officials were deliberately indifferent to the risk of him being attacked by his

21 cellmate on May 19, 2011…."  ECF No. 14-3 at 2.  The affidavit provided by A. Briones

22 describes the processing of misconduct complaints against health care staff by prisoners.  See

23 ECF No. 14-4.  "When a health care appeal is treated as a staff complaint it is sent to the Chief

24 Executive Officer to review, investigate, and issue a response to the inmate.  Treating an appeal

25 as a staff complaint does not limit the ability of an inmate to appeal his grievance to the

26 Director's Level of Review."  ECF No. 14-4 at 1-2.  Attached to Briones' affidavit is the CDCR

27 602 appeal form logged as appeal no. SAC HC 11014641/SAC SC 11000479, submitted by

28 plaintiff pertaining to the medical care he received after his May 19, 2011 assault by a fellow

1   inmate.  ECF No. 14-4 at 4-7.  This inmate appeal was partially granted at the second formal

2   level, and was not appealed thereafter.  Id.

3   E.      Plaintiff's Opposition

4           In his opposition to the motion to dismiss, plaintiff alleges that his efforts to

5   administratively exhaust his claims were thwarted by the improper screening of his appeals by

6   prison officials.  See ECF No. 23.  In support, plaintiff submitted copies of a CDCR 602 appeal

7   form alleging that he was the "victim of violence and officer negligence" in relation to double-

8   celling on May 19, 2011.  See ECF No. 23 at 14.  This appeal specifically named defendants

9   Starnes and Gam as being the officers whose negligence led to plaintiff's assault by another

10  inmate.  Id.  In the section pertaining to the "action requested," plaintiff asked for "pain

11  management regimen of methadone; dismissal of RVR # A-S-11-05-040; release from

12  administrative segregation; transfer to CSP-Lancaster; commutation/suspension of remaining

13  sentence; and[,] all qualifying forms of compensatory relief for actual injury/damages and

14  prospective medical complications; [as well as] compensatory relief for deliberate negligence and

15  indifferent negligence."  ECF No. 23 at 15-16.  Plaintiff originally submitted this appeal on June

16  7, 2011.  Id.  However it was screened as a complaint pertaining to "living conditions" and

17  rejected on June 8, 2011 because "it involves multiple issues that do not derive from a single

18  event…" and because the "appeal issue is obscured by pointless verbiage or voluminous unrelated

19  documentation…."  ECF No. 23 at 28.

20          On June 29, 2011, plaintiff re-submitted this appeal form explaining that his complaint "is

21  expressing all one event, from the beginning to the end, which resulted in my injuries by the

22  cause of staff misconduct to follow safety precaution procedure of inspecting inmates in ad-seg

23  housing…."  ECF No. 23 at 18.  In response, this appeal was returned to plaintiff without any

24  explanation so he submitted it directly to the third level of administrative appeal.  ECF No. 23 at

25  8, 29.  On July 18, 2011 the Office of Appeals rejected plaintiff's appeal because it bypassed

26  required lower level(s) of review.  ECF No. 23 at 30.

27          Following this rejection, plaintiff re-submitted his appeal to first formal level of

28  administrative review on July 26, 2011.  ECF No. 23 at 8, 30.  This appeal was rejected on

August 3, 2011 because it involved "multiple issues that do not derive from a single event," it concerned "an anticipated action or decision," and because it was "missing necessary supporting documents."  ECF No. 23 at 30-31.  On this occasion, plaintiff was advised that his appeal involved a total of four separate issues that "will need to be handled by various areas.  Separate appeals will need to be submitted."  Id. at 31.  Specifically, plaintiff was instructed that he needed to provide more detailed information as well as a CDCR 1858 form as to his first issue involving a staff complaint.  Id.  His second issue related to pain management needed to be addressed on a Health Care 602 form.  Id.  His third issue related to the requested dismissal of a rules violation report ("RVR") required him to provide the final copy of the RVR itself.  Id.  And, plaintiff's request to be released from administrative segregation and transferred to a different prison required a CDC 128-G and 114-D forms to be submitted.  Id.

On August 11, 2011, plaintiff re-submitted his appeal form to the first formal level of administrative review along with the requested CDCR 1858, 128-G and 114-D forms.  ECF No. 23 at 32.  Plaintiff additionally submitted a hand-written note indicating that his pain management and RVR issues were contained within the "actions requested" section of the appeal form and were thus not separate issues.  Id.  This appeal was once again rejected on August 18, 2011 for the same reasons as the previous appeal.  ECF No. 23 at 33-35.  While this time plaintiff was "thanked" for providing the requested documents, his appeal was nonetheless rejected once more with an instruction to attach his four issues on separate 602 forms.  Id.  Four separate 602 forms were provided to plaintiff at this juncture with each one labeled with what appears to be a post-it note identifying each issue to be raised on the form.  ECF No. 23 at 10, 36-42.

Plaintiff once again complied with the instructions provided by the appeals coordinator and re-submitted four separate 602 forms on August 20, 2011 "in a big yellow envelope via institutional mail."  ECF No. 23 at 10-11, 36-42.  After thirty days passed without any response to this latest submission, plaintiff submitted a CDCR-22 form to the first administrative level of review requesting the status of his appeal.  ECF No. 23 at 11.  Plaintiff received a response on October 10, 2011 from the Appeals Coordinator at CSP-Sac indicating that the review of his appeal had been delayed and that the estimated completion date was October 25, 2011.  ECF No.

1   23 at 50.  After submitting another CDCR-22 form requesting the status of his August 11, 2011

2   appeal without receiving any response, plaintiff filed the instant civil rights action on December

3   9, 2012.  ECF No. 23 at 11.[3]

4          Plaintiff also addresses his separate health care appeals regarding defendant Wangombe.

5   On July 25, 2011 plaintiff filed a health care 602 appeal form alleging that Registered Nurse

6   Wangombe provided inadequate medical care and refused to let a doctor examine him following

7   his May 19, 2011 assault by another inmate.  ECF No. 23 at 57-58.  The health care appeal form

8   indicates that this appeal was logged as No. SAC HC 11014641 and the informal as well as first

9   formal levels of review were bypassed.[4]  ECF No. 23 at 57-58.  Plaintiff's health care appeal was

10  partially granted on September 30, 2011 at the second formal level of review following an inquiry

11  in which it was determined that staff did not violate CDCR policy.  ECF No. 23 at 60-61.  The

12  memorandum detailing this response to plaintiff's staff complaint against Registered Nurse

13  Wangombe informed him that:

14          "[a]llegations of staff misconduct do not limit or restrict the
        availability of further relief via the inmate appeals process.  If you
15      wish to appeal the decision, you must submit your staff complaint
        appeal through all levels of appeal review up to, and including, the
16      Director's Level of Review.  Once a decision has been rendered at
        the Director's Level of Review, your administrative remedies will
17      be considered exhausted."

18  ECF No. 23 at 61.

19          Also attached to plaintiff's opposition to the motion to dismiss are two separate inquiries

20  that plaintiff submitted to CDCR staff concerning his health care 602 appeal.  ECF No. 23 at 63,

21  65.  On March 17, 2013 plaintiff completed a CDCR 22 form requesting a copy of his second

22  level staff complaint appeal.  ECF No. 23 at 63.  After being informed that the wrong form was

23  used to make the inquiry, plaintiff submitted a GA 22 form requesting the same thing on March

24  _____

25  [3] Plaintiff details additional efforts he took to exhaust his administrative remedies after filing the
    complaint in this case.  See ECF No. 23 at 11-12.  The court disregards this information because
26  exhaustion is required prior to the time of filing.  See McKinney v. Carey, 311 F.3d 1198 (9th
    Cir. 2002).

27  [4] As of January 28, 2011 the informal resolution level was eliminated so this appears to be an
28  error in processing the appeal form.

1   21, 2013.  ECF No. 23 at 65.  Plaintiff received a response on March 22, 2013 indicating that

2   based on a search of the appeals database, his appeal form No. HC 11014641 "never went to the

3   2nd level so there is no copy to send you."  Id.

4   F.   Defendants' Reply

5         In their reply, defendants assert that the multiple screenings of plaintiff's non-health care

6   related appeals were consistent with applicable regulations.  ECF No. 26 at 3-6.  Defendants

7   further contend that the October 20, 2011 response, which indicated that there was a delay in

8   processing appeal log No. SAC-S-11-00533, did not relate to the events of May 19, 2011.  ECF

9   No. 26 at 3 (citing ECF No. 26-1 at ¶ 6 (Lynch Affidavit)).  Defendants argue that "[t]here is

10  simply no evidence to support Gray's claim that he submitted four separate appeals on August 20,

11  2011, that did not receive a response."  ECF No. 26 at 6.

12        Defendants additionally submit the declaration of J. Lynch, the Appeals Coordinator at

13  CSP-Sacramento, who details the plaintiff's appeal history at that institution.  ECF No. 26-1.

14  According to Lynch, appeals that are screened-out are not assigned a log number "and the

15  physical records from screened-out appeals are not maintained."  Id. at 2.  However, later in this

16  same affidavit, Lynch states that "[h]ad these [August 20, 2011] appeals been received, they

17  would have been stamped by the appeals office or he would have received a screen-out letter in

18  response."  ECF No. 26-1 at 3.  Plaintiff only filed two administrative appeals which were

19  accepted for review between May 19, 2011 and May 19, 2012.  Id.  "Neither of these appeals

20  alleged that any officers acted with deliberate indifference that caused him to be injured by his

21  cellmate on May 19, 2011."  ECF No. 26-1 at 2.  In his affidavit J. Lynch states that he "reviewed

22  the documents attached to inmate Gray's Opposition to Defendants' Motion to Dismiss (ECF No.

23  23), and none of them indicate his appeals were improperly screened."  Id.

24        Along with the Lynch affidavit, defendants submit the second level appeal decision in

25  Appeal Log No. SAC-S-11-00533 dated September 13, 2011 that concerns plaintiff's continued

26  placement in administrative segregation.  ECF No. 26-1 at 5-6.  The original CDCR 602 appeal

27  form dated May 5, 2011 is also included as an exhibit.  ECF No. 26-1 at 7-9.  In the appeal form

28  plaintiff states that he is appealing the Institution Classification Committee's decision of April 20,

1   2011 to retain him in administrative segregation. Id. Interestingly, this appeal form also

2   demonstrates that it was screened-out on four separate occasions between May 16, 2011 and

3   August 19, 2011. Id. at 11.

4        The second CDCR 602 appeal form included with the Lynch affidavit concerns a June 27,

5   2011 complaint concerning damage caused to plaintiff's personal property. ECF No. 26-1 at 27-

6   28. After being screened out on two separate occasions, this appeal was ultimately withdrawn by

7   plaintiff at the first formal level of review on August 18, 2011 because the property was replaced.

8   ECF No. 26-1 at 28.

9        To the extent that the Lynch affidavit contains legal conclusions rather than factual

10  averments, e.g. ECF No. 26-1 at ¶ 7, the court will disregard them and reach its own conclusions

11  based on the evidence submitted by the parties.

12  G.   Plaintiff's Unauthorized Response to Defendants' Reply

13       In this unauthorized submission, plaintiff details the above-noted history concerning the

14  screening of his inmate appeals. ECF No. 30. He argues that his appeals did not contain multiple

15  issues he wanted to address, but only multiple forms of relief that he wanted "granted for the staff

16  misconduct claim of deliberate indifference that caused his injuries." ECF No. 30 at 6. With

17  respect to his health care appeal against defendant Wangombe, plaintiff states that he "thought his

18  appeal was being held [un]til the investigation was completed before he could continue to the

19  next level." Id. at 7.

20       Defendants have moved to strike this unauthorized response since neither the Federal

21  Rules of Civil Procedure nor the Local Rules provide for such a pleading and because defendants

22  did not raise any new arguments in their reply brief which would warrant a response. ECF No.

23  35.

24       The court will deny the motion to strike as defendants did submit an additional thirty-nine

25  pages of documentary evidence attached to their reply. This evidence was available to defendants

26  at the time they filed their motion to dismiss, yet they chose to wait to file it until their reply, thus

27  foreclosing plaintiff's ability to respond to the evidence. The sand-bagging of a pro se plaintiff

28  will not be condoned by this court.

11

III.     Analysis

It is undisputed in this case that plaintiff did not pursue his inmate appeals through the third level of review.  However, plaintiff contends that the appeals coordinators three times improperly screened out and rejected his inmate appeals at the first level of review, thereby rendering administrative remedies effectively unavailable to him and excusing his failure to exhaust.  Defendants take the position that the screening out of plaintiff's three first level appeals was proper and authorized by the governing regulations.

The Ninth Circuit has held that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA."  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  As the Ninth Circuit noted, if prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and, as a result, his administrative remedies become unavailable.  Id.  In order to fall within this exception, the inmate must establish: (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court; and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.  Id. at 823–24.

A.   Staff Complaint re Failure to Protect

Plaintiff's initial grievance of the May 19, 2011 attack plainly alleged that plaintiff was assaulted by inmate Williams as the result of Officers Gam's and Starnes' failure to protect him.  See ECF No. 23 at 15-16 (602 dated June 7, 2011).  Moreover, this 602 made clear that the assault occurred in the process of housing plaintiff with a new cell mate.  Id.  The complaint attributes the decision to double-cell plaintiff with inmate Williams to defendant Nielson.  ECF No. 1 at 4.  The 602 specified that Officers Gam and Starnes failed to search Williams or the cell before putting the inmates together.  ECF No. 23 at 16.  The complaint alleges that defendant Virga, the warden, is responsible for failing to adequately train correctional staff regarding the search procedures that apply when double-celling inmates in a high risk security unit, and that this failure to train resulted in plaintiff's injuries.  ECF No. 1 at 3.  Because the June 7, 2011

12

1   inmate appeal notified prison authorities of the nature of the problem for which plaintiff sought

2   redress – an inmate assault which resulted from double-celling and staff failure to take necessary

3   safety precautions – the 602 would have sufficed to exhaust Claim One as to these four

4   defendants had it been pursued through all levels of administrative appeal.  See Sapp, 623 F.3d at

5   824 ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the

6   problem for which the prisoner seeks redress."); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir.

7   2009) (grievance satisfies the administrative exhaustion requirement if it "alerts the prison to the

8   nature of the wrong for which redress is sought.").[5]

9       The question then becomes whether plaintiff's failure to pursue the complaint through all

10   levels of administrative appeal is attributable to plaintiff or to prison officials.  The June 7, 2011

11   inmate appeal was rejected because it purportedly addressed "multiple issues that do not derive

12   from a single event" and because it was "obscured by pointless verbiage or voluminous unrelated

13   documentation."  ECF No. 23 at 28.  While the applicable regulations do provide for dismissal of

14   appeals on these grounds, they do not apply to plaintiff's 602.  The sole subject of the appeal,

15   described in response to the prompt "Explain your issue," is the May 19, 2011 assault and its

16   immediate aftermath.  No other incident is complained of.  Plaintiff's statement of the issue

17   consists of approximately 250 words, and is relatively concise and clearly presented.  No

18   pointless verbiage is apparent.  ECF No. 23 at 15-16.  The attachments all pertain to the May 19,

19   2011 altercation between plaintiff and inmate Williams or to plaintiff's security classification and

20   attendant housing requirements, which are relevant to the dangers of double-celling.  This

21   documentation is neither unduly voluminous nor unrelated.  Id. at 19-27.  The relief sought by the

22   602 does indeed range widely, from pain medication for plaintiff's injuries to dismissal of a rules

23   violation report that plaintiff received in relation to the altercation, but these matters are all

24

25   [5] Although Virga and Nielson were not named in the 602, that fact does not defeat exhaustion.

26   Sapp, 623 F.3d at 824 (prisoner was not required to identify responsible parties in prison
    grievance to exhaust claims against specific defendants).  The complaint states facts linking these

27   defendants to the events of May 19, 2011, which were adequately grieved for exhaustion
    purposes.

28

1   mentioned solely in the context of "actions requested."[6]  All the requested relief relates to the

2   May 19 incident.  Id. at 15.  For all these reasons, the screen-out appears to have been

3   inappropriate.  For the reasons that follow, however, plaintiff is entitled to relief from the non-

4   exhaustion rule even if the initial screening order was proper.

5         After his initial appeal was rejected, plaintiff made diligent and persistent efforts to obtain

6   review.  He promptly resubmitted his 602 with an explanation that he was seeking to appeal a

7   single incident of staff misconduct.  ECF No. 23 at 17-18 (June 29, 2011 appeal).  When he

8   received no response, plaintiff sought advice from a prisoner's rights organization and then,

9   pursuant to that advice, submitted his appeal directly to the Office of Appeals for discretionary

10  third level review.  Id. at 8, 29.  Although this appeal was rejected on July 18, 2011for bypassing

11  lower levels of review, id. at 29, plaintiff is correct that Cal. Code Regs. tit. 15, § 3084.6(a)(3)

12  and (4)[7] give the third level appeals chief discretion to accept and consider a previously rejected

13  appeal.  Accordingly, plaintiff's request for review was permissible (or, at least, based on a

14  reasonable reading of the rules).  When this effort failed, plaintiff started over at the first formal

15  level of review on July 26, 2011.  Id. at 29.

16        The appeal submitted on July 26 was screened out on August 3 on the same grounds

17  stated in first screen-out order: that too many separate issues were being appealed in a single 602.

18  Id. at 30-31.  This time the institution appeals coordinator provided specific advice about what

19

20  [6] Defendants characterize the various actions requested by plaintiff as distinct "issues" within the
21  meaning of the rule that limits a single 602 to a single matter.  See ECF No. 26 at 5.  However,
    Cal. Code Regs. tit. 15, § 3084.6(b)(8) bars appeals "involv[ing] multiple issues that do not derive
22  from a single event. . ."  All actions requested by plaintiff "derive from" the May 19, 2011
    assault.  The 602 plainly identifies the "issue" appealed as the conduct of prison staff in relation
23  to the assault.  Concerns regarding pain relief and subsequent disciplinary proceedings are
    presented only in the context of requested remedies, and not in plaintiff's statement of his issue.
24  The undersigned is cognizant of the fact that the various remedies requested by plaintiff were not
    all available via the single 602 addressing the May 19 assault, and the subsequent history of
25  plaintiff's attempt to exhaust (which is discussed below) makes clear that this was the reasoning
26  behind the screen-out.  Accordingly, the court does not rely on a finding that the first screen-out
    was improper, but proceeds to plaintiff's continuing attempts to comply with the rules.

27
    [7] Subsequent unlabeled statutory references are to Title 15 of the California Code of Regulations.
28

1    forms needed to be submitted in order to seek the various kinds of relief that had been requested.

2    Id. at 31.  On August 11 plaintiff resubmitted his appeal, supported by several of the forms that

3    had been specified by the appeals coordinator.  Id. at 30-31 (directing plaintiff to submit, inter

4    alia, CDC Forms 1858, 128-G and 114-D); id. at 32 (cover letter documenting submission of

5    same).  Plaintiff did not, however, submit the forms that he had been told were necessary to

6    separately appeal his pain management and RVR issues, because – as he explained yet again – *he*

7    *was not attempting to appeal those matters*.  Id. at 32 (distinguishing 602 "A section" issues from

8    "B section" remedial actions requested).  Once more plaintiff was told that his appeal could not

9    be processed because he was raising too many unrelated issues together.  Id. at 33 (screen-out

10   letter dated August 18, 2011).  Once again, the institution's refusal to process the appeal on these

11   grounds obstructed plaintiff's ability to exhaust.

12           Importantly to the present analysis, plaintiff's July 26 and August 11 submissions were

13   not cancelled as outside the applicable time limits or for any other reason.[8]  Despite the time that

14   had elapsed since the May 19 assault, and plaintiff's history of what prison officials considered

15   persistent noncompliance with the appeals regulations, he was specifically advised in the August

16   18 screen-out letter that he could resubmit his appeal yet again and have it considered if he used

17   separate forms for each "issue."  Id.  Indeed, at no point during the convoluted history of his

18   attempted staff complaint was plaintiff told that he had lost the opportunity to perfect his appeal.

19   On the contrary, he was repeatedly instructed to resubmit his paperwork.[9]  Accordingly, as of

20   August 18, 2011 plaintiff had not forfeited the opportunity for administrative exhaustion and had

21   thirty days in which to submit corrected documents.  § 3084.6(a)(2).

22

23   [8] See § 3084.6(c)(4).  Inmate appeals may be "cancelled" for untimeliness and other reasons
     specified in § 3084.6(c), and are not thereafter renewable except under limited circumstances
24   specified in § 3084.6(a)(3) & (4).  Appeals are "rejected" for procedural mistakes that can be
     cured.  § 3084.6(b) (listing bases for rejection), § 3084.6(a)(2) (providing for resubmission of
25   corrected appeal within 30 days of rejection).

26   [9] As previously noted, § 3084.6(a)(2) provides that an appeal rejected for procedural reasons may
27   later be accepted if the procedural problem is corrected and the appeal returned within 30 days of
     rejection.  Plaintiff responded within thirty days, usually within a very few days, every time his
28   appeal was rejected.

Plaintiff contends that on August 20, 2011 he submitted all the requested documentation, including separate appeals of the pain management issue and RVR, on forms provided to him by the appeals coordinator.  Defendants contend that no such appeals packet was ever received, and that plaintiff therefore failed to exhaust.  ECF No. 26 at 6.  Petitioner counters that he never received a response to his August 20 staff complaint, and that exhaustion should therefore be excused.  In the final analysis, then, disposition of the motion to dismiss turns on whether plaintiff did in fact comply with the August 18 screen out by re-submitting four separate appeal forms on August 20, 2011.

Plaintiff has stated under oath that he submitted four separate appeal forms via institutional mail on August 20, 2011.  ECF No. 23 at 11.  He has also submitted a copy of his response to the August 18 screen-out that is dated August 20 and states that it is accompanied by "form numbers one through four."  Id. at 33.  Plaintiff avers that the entire set of appeal documents comprising Exhibit A to his opposition, id. at 13-42, was submitted to the appeals coordinator's office on August 20.  Id. at 11.  This set of documents does include copies of four separate 602 forms addressing (1) the RVR, (2) staff responsibility for the assault, (3) pain management needs resulting from injuries sustained in the assault, and (4) requested release from ad seg and transfer.  Id. at 36-42.  These documents appear to bear post-it note labels consistent with plaintiff's declaration that the appeals coordinator gave him, together with the August 18 screen-out letter, blank 602 forms with "note tags. . . stating or titling what each blank appeal is for."  Id. at 10.  The four completed 602s were apparently back-dated by plaintiff to the date of the initial 602 (June 7, 2011).  Id. at 36-42.  Plaintiff states under oath that he never received a response to his August 20 submission, and that his inquiries went unanswered.  Id. at 11.

Defendants argue that plaintiff has failed to prove he resubmitted his appeal after August 18, but the court rejects this argument.  Plaintiff's sworn statements, supported by copies of the documents that he swears he submitted, are sufficient to establish that plaintiff complied with the August 18 screen-out order.  The fact that the institution's appeals logs do not reflect receipt of the August 20 submission, as defendants' declarant states, does not mean that plaintiff did not deposit it in the institutional mail as he claims.  Defendants also argue that an October 2011 letter

16

1   from the appeals coordinator to plaintiff, acknowledging a delay in the processing of an appeal,[10]

2   involved an appeal of a different issue and does not demonstrate that a properly submitted appeal

3   of the May 19 incident had been received and was being processed.  That letter is immaterial to

4   the court's conclusion.

5   Defendants bear the burden of proving non-exhaustion, Wyatt, 315 F.3d at 1119, and their

6   reliance on plaintiff's appeal log does not satisfy that burden.  The appeals log documents the

7   appeals' coordinator's receipt of documents and not whether plaintiff placed the documents into

8   the institutional mail.  There is no factual basis for any inference that the contents of an appeals

9   log from CSP-Sacramento accurately reflects whether documents were placed into the

10  institutional mail system.[11]  Plaintiff has produced evidence to show that he submitted the

11  documents.  Defendants have not rebutted that showing with evidence going to plaintiff's use of

12  the institutional mail.  Based on the absence of any documentation countering plaintiff's affidavit,

13  the undersigned finds that plaintiff has demonstrated that he re-filed four separate inmate appeals

14  at the first level of review concerning his assault by another inmate on May 19, 201, and received

15  no response from the appeals coordinator.  After filing two separate inquiries concerning these

16  administrative appeals, plaintiff abandoned further efforts to exhaust his administrative remedies.

17  Based on this record, the undersigned finds that plaintiff's abandonment of the second and

18  third levels of administrative review was excused pursuant to Nunez v. Duncan, 591 F.3d 1217,

19  1224 (9th Cir. 2010), and that these administrative remedies were effectively unavailable.  In

20  Nunez, the Ninth Circuit found that an inmate was excused from exhausting his administrative

21  remedies because he "took reasonable steps to exhaust his Fourth Amendment claim and was

22  precluded from exhausting, not through his own fault but by the Warden's mistake."  Id. at 1224.

23  Similarly, in Rupe v. Beard, 2013 WL 2458398 (E.D. Cal. 2013), a district judge of this

24  court reasoned that "after an inmate has waited a reasonable period of time and has received no

25  response or notice of delay, the failure by prison officials to abide by inmate-grievance

26  _____

[10] See ECF No. 23 at 50.

27  [11] Problems with the processing of inmate mail at CSP-Sacramento during the period of plaintiff's
attempts to exhaust have been the subject of other lawsuits in this district.  See, e.g., Manning v.

28  Bunnell, No. 2:12-cv-2440 MCE AC, ECF No. 63 at 14-15.

1    regulations must excuse the inmate's failure to exhaust; otherwise, prison officials could

2    indefinitely delay inmates from pursuing legal remedies simply by ignoring all inmate appeals."

3    Id. at *16.  That reasoning is sound.  While the Ninth Circuit has not specifically found that an

4    untimely or delayed response by prison officials automatically excuses a prisoner's failure to

5    exhaust, it has left open that exact possibility.  See Brown v. Valoff, 422 F.3d 926, 943 n. 18 (9th

6    Cir. 2005); see also Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (stating that the

7    "failure to respond to a grievance within the time limits contained in the grievance policy renders

8    an administrative remedy unavailable...."); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)

9    (affirming district court decision not to dismiss for failure to exhaust when a Department of

10   Corrections' failure to respond to a preliminary grievance precluded the plaintiff from pursuing a

11   formal grievance).

12        In the instant case, plaintiff took all reasonable steps to comply with the three prior screen

13   outs of his first level administrative appeal by submitting the requested documentation as well as

14   by completing separate appeal forms for each separate issue.  However, after he had complied and

15   re-submitted the appeals in proper form on August 20, 2011, prison officials did not respond.

16   Under these circumstances, the undersigned finds that the second and third levels of

17   administrative review were effectively unavailable to plaintiff.  Accordingly, the motion to

18   dismiss defendants Virga, Nielson, Starnes, and Gam should be denied.

19        B.  Health Care Appeal

20        The court now turns to the exhaustion status of plaintiff's health care appeal.  The parties

21   agree that plaintiff did not file a Director's Level appeal with respect to his complaint of

22   inadequate medical care by defendant Wangombe.  Plaintiff's explanation for this failure – that he

23   believed his appeal "was being held till the investigation was completed before he could continue

24   to the next level," ECF No. 23 at 7 -- is simply not persuasive in light of the evidence he himself

25   submitted, which demonstrates that he was informed he could appeal the decision to the

26   Director's Level of Review.  See id. at 61.  Plaintiff was specifically informed on September 28,

27   2011 that the internal inquiry had been completed and that it was determined that staff did not

28   violate CDCR policy.  Id. at 60-61.  As plaintiff was advised at that time, he was required to

1   pursue his appeal through the Director's level in order to exhaust.  Id.

2   The instant case is distinguishable from Brown v. Valoff, 422 F.3d 926, 938 (9th Cir.

3   2005), in which the Ninth Circuit concluded that an inmate had sufficiently exhausted his

4   administrative remedies concerning a staff complaint by pursuing it only through the second level

5   of administrative review.  "[N]o further relief was in fact 'available' through the appeals process,

6   although the staff complaint process to which the grievance was directed… had not yet run its

7   course" because the staff investigation by the Office of Internal Affairs had already been opened.

8   Id. at 939.  Brown, however, does not establish a per se rule that the pendency of an internal

9   investigation renders further administrative appeal unavailable.  The result in Brown turned on

10  the fact that the prisoner -- unlike plaintiff here --was not informed that any further review was

11  available to him following the second level response.  Id. at 937.  Indeed, the Brown court found

12  that another prisoner, Hall, had not satisfied the exhaustion requirement because he – like plaintiff

13  here -- had been informed that if he was dissatisfied with the second level appeal response, further

14  administrative review was available.  Id. at 941.  The second level appeal response in plaintiff's

15  case specifically advised him that he could submit his staff complaint appeal up to, and including,

16  the Director's Level of Review.  ECF No. 23 at 61.  Under Brown, plaintiff's failure to do so

17  renders his claim unexhausted.  For this reason, it is recommended that defendants' motion to

18  dismiss defendant Wangombe be granted.

19  The only factual allegations of the complaint regarding defendant Phelps are contained in

20  the medical care claim.  Plaintiff alleges that Phelps was present when nurse Wangombe

21  examined plaintiff, asked the nurse whether plaintiff needed to see a doctor, and questioned

22  plaintiff about the assault while he was in medical distress.  ECF No. 1 at 6-7.  A very liberal

23  construction of the complaint could support an inference that Phelps participated in the failure to

24  obtain adequate medical care.  Because Phelps is implicated only in the unexhausted medical care

25  claim, it will be recommended that the motion to dismiss be granted as to him.

26  IV.   Ancillary Motion

27  Also pending before the court is plaintiff's motion for a court order to compel the return

28  of his personal legal property.  ECF No. 28.  The court notes that this motion was filed on

19

1    December 19, 2013,[12] almost one month after briefing had closed on defendants' motion to

2    dismiss, and, on the same day that plaintiff filed an unauthorized sur-reply to the pending motion

3    to dismiss.  See ECF No. 30.

4         In the motion, plaintiff indicates that he was transferred from Pelican Bay State Prison to

5    Salinas Valley State Prison on December 5, 2013 without any of his legal property.  ECF No. 28

6    at 1.  Plaintiff requests a court order compelling Pelican Bay State Prison to forward all of his

7    legal property to him "in a reasonable amount of time…."  ECF No. 28 at 1.

8         Since there is no motion presently pending to which plaintiff must respond, this request

9    will be denied.  Plaintiff has not shown a sufficient reason for this Court to interfere in the day-to-

10   day operations of the prison. See Turner v. Safley, 482 U.S. 78, 84–86 (1987); Wright v. Rushen,

11   642 F.2d 1129, 1132 (9th Cir.1981) (courts should avoid enmeshing themselves in minutiae of

12   prison operations).

13        Accordingly, IT IS HEREBY ORDERED that:

14        1.  Plaintiff's motion to compel the return of his legal property (ECF No. 28) is denied;

15             and

16        2.  Defendants' motion to strike plaintiff's unauthorized sur-reply (ECF No. 35) is denied.

17        IT IS HEREBY RECOMMENDED that:

18        1.  The motion to dismiss for failure to exhaust administrative remedies (ECF No. 14) be

19   granted as to defendant Wangombe and Phelps, and denied with respect to defendants Virga,

20   Nielson, Starnes, and Gam;

21        2.  Defendants Virga, Nielson, Starnes, and Gam be directed to file an answer to the

22   complaint within thirty days of the adoption of these findings and recommendations.

23        These findings and recommendations are submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

25   after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27

28   _____

[12] The filing date is based on the use of the prison mailbox rule.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule).

20

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 27, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE