1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BERNARDOS GRAY, JR.,                    No.  2:12-cv-3006 KJM AC P

12              Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   T. VIRGA, et al.,

15              Defendants.

16

17        On November 28, 2016, the undersigned issued Findings and Recommendations (ECF

18   No. 116) regarding defendants' motion for summary judgement (ECF No. 100), and ordered

19   plaintiff to show cause why the claims against defendant Virga should not be dismissed for failure

20   to state a claim.  Plaintiff has responded to the order to show cause (ECF No. 120), and upon

21   review of plaintiff's response the court has concluded that the Order to Show Cause was

22   improvidently issued.  Accordingly, the Order and Findings and Recommendations filed

23   November 28, 2016, will be vacated and the undersigned issues the following Amended Order

24   and Findings and Recommendations.

25        I.      Procedural History

26             On December 9, 2012,[1] plaintiff filed a complaint in which he alleged that defendants

27   _____

28   [1]  Since plaintiff is a prisoner proceeding pro se, he is afforded the benefit of the prison mailbox
     rule.  See Houston v. Lack, 487 U.S. 266, 276 (1988).

1

1    Virga, Nielson, Starnes, and Gam failed to protect him and that defendants Phelps and

2    Wangombe were deliberately indifferent to his serious medical needs.  ECF No. 1.  Defendants

3    moved for dismissal on the ground that plaintiff did not exhaust his administrative remedies.

4    ECF Nos. 14, 17.  The motion to dismiss was denied as to defendants Virga, Nielson, Starnes,

5    and Gam and granted as to defendants Phelps and Wangombe.[2]  ECF Nos. 36, 40.

6            Defendants Virga, Nielson, Starnes, and Gam proceeded to answer the complaint and,

7    after the close of discovery, filed a motion for summary judgment.  ECF No. 64.  As a result of

8    unresolved discovery issues and subsequent complications related to plaintiff's release from state

9    custody, the motion for summary judgment was vacated with a new filing deadline to be

10   established once plaintiff's status and property issues were resolved.  ECF Nos. 89, 95.  After the

11   deadline for filing a summary-judgment motion was re-set (ECF No. 99), defendants filed the

12   instant motion (ECF No. 100), which plaintiff opposes (ECF No. 111).

13       II.        Plaintiff's Allegations

14           Plaintiff alleges that defendants Virga, Nielson, Gam, and Starnes violated his Eighth

15   Amendment rights when they moved another inmate into his cell without taking proper safety

16   precautions and that upon placement in the cell the inmate immediately assaulted him.  ECF No.

17   1 at 3-5.  Specifically, he claims that defendant Nielson approved inmate Williams to house with

18   plaintiff despite knowing that Williams was "deemed a[n] 'obvious' danger to others in the

19   general population."  Id. at 4.  Defendant Virga failed to properly train defendants Gam and

20   Starnes in the mandatory requirements and procedures for cell searches in high risk security units.

21   Id. at 3.  Plaintiff also appears to allege that Virga implemented deficient double-cell policies in

22   ───────────────

23   [2]  The motion to dismiss based on plaintiff's failure to exhaust was resolved prior to the Ninth
     Circuit's decision in Albino v. Baca, which requires that questions of administrative exhaustion
24   be decided pursuant to motions for summary judgment.  747 F.3d 1162, 1166 (9th Cir. 2014).  In
     this case, a copy of the appeal response relied on by the court in granting the motion as to
25   defendants Phelps and Wangombe was attached to the complaint.  ECF No. 1 at 23-24; ECF No.
     36 at 18-19.  Since the court may properly consider documents attached to the complaint, United
26   States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted), plaintiff's "failure to
     exhaust [was] clear from the face of the complaint and the result would not be altered by
27   discovery," McBride v. Lopez, 807 F.3d 982, 985 (9th Cir. 2015) (citing Albino, 747 F.3d at
     1169).  Because there was "no need for further factual development," Albino does not affect the
28   decision in this case.  McBride, 807 F.3d at 985.

1   those same units. Id. at 8.  As a result of the deficient training, Gam and Starnes did not conduct

2   a mandatory search before placing inmate Williams in the cell with him, allowing Williams to

3   assault plaintiff with a weapon almost immediately after being placed in the cell.  Id. at 3.  Once

4   the assault began, Gam and Starnes deliberately sprayed plaintiff with pepper spray, rather than

5   his assailant, and did not take any further action until the assault was over.  Id. 4-5.

6       III.     Motion for Summary Judgment

7           A.  Defendants' Motion

8           Defendants move for summary judgment on the grounds that defendant Virga did not

9   personally participate in the alleged violations, that defendants were not deliberately indifferent

10  because they were not aware of a substantial risk of harm to plaintiff, that they were not required

11  to conduct searches as plaintiff alleges, that they responded appropriately to the assault, and that

12  they are alternatively entitled to qualified immunity.  ECF No. 100-1 at 8-14.  They also argue

13  that plaintiff's request for injunctive relief against defendant Virga is moot and should be

14  dismissed.  Id. at 14.

15          B.  Plaintiff's Response

16          It is well-established that the pleadings of pro se litigants are held to "less stringent

17  standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

18  (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

19  govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other

20  grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the

21  unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are

22  subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited

23  access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

24  1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of

25  "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

26          The court is mindful of the Ninth Circuit's more overarching caution in this context, as

27  noted above, that district courts are to "construe liberally motion papers and pleadings filed by

28  pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

1   611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, though plaintiff has largely complied with the

2   rules of procedure, the court will consider the record before it in its entirety.  However, only those

3   assertions in the opposition which have evidentiary support in the record will be considered.

4          In his opposition, plaintiff argues that defendants are not entitled to summary judgment

5   because there are material issues of fact as to the required search procedures.  ECF No. 111 at 3-

6   4.  Plaintiff further argues that the fact that defendants Gam, Starnes, and Nielson stated there was

7   no policy requiring them to search Williams proves that defendant Virga was "grossly negligent

8   in managing subordinates."  Id. at 7-8.  He contends that defendant Virga is not entitled to

9   summary judgment because Virga knew that Williams had attacked another inmate who was in

10  the same gang as plaintiff, but failed to order his subordinates to keep the two gangs separated.

11  Id. at 6.  As to all defendants, plaintiff argues that they are not entitled to summary judgment

12  because they all knew that Williams was a threat to his safety.  Id. at 10-35.

13         C.  Legal Standards for Summary Judgment

14         Summary judgment is appropriate when the moving party "shows that there is no genuine

15  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

16  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

17  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

18  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

19  moving party may accomplish this by "citing to particular parts of materials in the record,

20  including depositions, documents, electronically stored information, affidavits or declarations,

21  stipulations (including those made for purposes of the motion only), admission, interrogatory

22  answers, or other materials" or by showing that such materials "do not establish the absence or

23  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

24  support the fact."  Fed. R. Civ. P. 56(c)(1).

25         "Where the non-moving party bears the burden of proof at trial, the moving party need

26  only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

27  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

28  Indeed, summary judgment should be entered, "after adequate time for discovery and upon

1    motion, against a party who fails to make a showing sufficient to establish the existence of an

2    element essential to that party's case, and on which that party will bear the burden of proof at

3    trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

4    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

5    a circumstance, summary judgment should "be granted so long as whatever is before the district

6    court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

7    56(c), is satisfied." Id.

8         If the moving party meets its initial responsibility, the burden then shifts to the opposing

9    party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

10   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

11   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

12   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

13   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

14   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

15   fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

16   Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

17   809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

18   reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

19        In the endeavor to establish the existence of a factual dispute, the opposing party need not

20   establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

21   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

22   truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities

23   Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the

24   pleadings and to assess the proof in order to see whether there is a genuine need for trial."

25   Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

26        "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

27   court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

28   v. Central Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

1    the opposing party's obligation to produce a factual predicate from which the inference may be

2    drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

3    demonstrate a genuine issue, the opposing party "must do more than simply show that there is

4    some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

5    omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

6    non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

7    U.S. at 289).

8            On February 22, 2016, defendants served plaintiff with notice of the requirements for

9    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 105.

10   See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,

11   960 (9th Cir. 1998) (movant may provide notice) (en banc).

12           D.  Legal Standards Governing Eighth Amendment

13           "The Constitution does not mandate comfortable prisons, but neither does it permit

14   inhumane ones."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and

15   citation omitted).  "[A] prison official violates the Eighth Amendment only when two

16   requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious, a

17   prison official's act or omission must result in the denial of the minimal civilized measure of

18   life's necessities."  Id. at 834 (internal quotation marks and citations omitted).  Second, the prison

19   official must subjectively have a sufficiently culpable state of mind, "one of deliberate

20   indifference to inmate health or safety."  Id. (internal quotation marks and citations omitted).  The

21   official is not liable under the Eighth Amendment unless he "knows of and disregards an

22   excessive risk to inmate health or safety; the official must both be aware of facts from which the

23   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

24   inference."  Id. at 837.  Then he must fail to take reasonable measures to abate the substantial risk

25   of serious harm.  Id. at 847.  Mere negligent failure to protect an inmate from harm is not

26   actionable under § 1983.  Id. at 835.  A person can deprive another of a constitutional right,

27   within the meaning of § 1983, "not only by some kind of direct personal participation in the

28   deprivation, but also by setting in motion a series of acts by others which the actor knows or

6

1    reasonably should know would cause others to inflict the constitutional injury." Johnson v.

2    Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).

3          E.   Undisputed Material Facts

4          At all times relevant to the complaint, plaintiff was an inmate housed at the California

5    State Prison-Sacramento (CSP-Sac).  Defendants' Statement of Undisputed Facts (DSUF) (ECF

6    No. 101) ¶ 1; Plaintiff's Response to DSUF (ECF No. 111-2) at ¶ 1.  At all times relevant to the

7    complaint, defendants were employed at CSP-Sac.  DSUF ¶¶ 2-4; Response to DSUF at ¶ 1.

8    Defendant Virga was the warden, defendant Nielson was a correctional lieutenant, and defendants

9    Gam and Starnes were correctional officers.  Id.

10         When an inmate housed in administrative segregation requests a cell move, the building's

11   lieutenant is supposed to review the central files of the requesting inmate and his potential new

12   cellmate before the move is approved.[3]  DSUF ¶ 7; Response to DSUF at ¶ 5.  After the lieutenant

13   determines that there are no safety concerns related to housing the two inmates together, the

14   inmates are asked to sign a compatibility chrono (CDCR form 1802-B), which provides the

15   inmates with an opportunity to refuse a cellmate or provide information as to why they do not

16   believe they can safely house with the new cellmate.  DSUF ¶ 8; Response to DSUF at ¶ 6.

17         On May 19, 2011, plaintiff and inmate Williams were initially housed in separate cells.

18   DSUF ¶ 9; Response to DSUF at ¶ 7; Reply in support of DSUF (ECF No. 113) ¶ 9.  Williams

19   advised defendant Gam that he was having problems with his cellmate and requested a cell

20   change that resulted in defendant Nielson approving Williams to house with plaintiff.  DSUF ¶¶

21   ////

22

23   [3]  Defendant Nielson's declaration, which defendants rely on to support DSUF ¶¶ 7 and 8,
     establishes only how defendant Nielson's carried out his duties related to inmate cell moves; it
24   does not establish the standard procedure.  ECF No. 104 at ¶ 2.  The declaration also states that
     Nielson reviewed inmate "administrative segregation files," not "central files" as indicated in
25   DSUF ¶¶ 7 and 8.  However, the DOM provided by plaintiff, and plaintiff's responses to DSUF
     ¶¶ 7 and 8, confirm the process outlined in DSUF ¶¶ 7 and 8.  ECF No. 111-1 at 247 (DOM §
26   54046.7.1, effective April 13, 2009); Response to DSUF at ¶¶ 5, 6.  Plaintiff's argument that the
     procedure was not properly carried out in his case (Response to DSUF at ¶ 6) does not create a
27   dispute as to what the process was supposed to entail.  DSUF ¶¶ 7 and 8 are therefore deemed
     undisputed.
28

10, 14; Response to DSUF at ¶¶ 8, 10.[4]  Prior to defendant Nielson's approval of the housing

assignment, he reviewed the inmates' administrative segregation files, which indicate their gang

affiliations and any known enemies.[5]  DSUF ¶ 14; Response to DSUF at ¶ 10.  Defendant Starnes

facilitated the signing of a compatibility chrono, which was signed by both plaintiff and Williams.

DSUF ¶ 13; Response to DSUF at ¶ 9.  After the cell move was approved, defendant Gam

escorted Williams to the cell where plaintiff was housed.[6]  DSUF ¶ 15; Response to DSUF at ¶

11.  Other than a visual search, defendant Gam did not search Williams before placing him in the

cell with plaintiff.  DSUF ¶ 16; Response to DSUF at ¶ 12.

Plaintiff and Williams were both placed in handcuffs before plaintiff's cell door was

opened.  DSUF ¶ 17; Response to DSUF at ¶ 2.  After Williams was placed inside the cell, his

handcuffs were removed first.  DSUF ¶ 19; Response to DSUF at ¶ 14.  While defendant Gam

was attempting to remove plaintiff's handcuffs, Williams began assaulting plaintiff.  DSUF ¶ 20;

Response to DSUF at ¶ 15.  Gam sounded the alarm and utilized his pepper spray through the

cell's food port.  ECF No. 1 at 4, ¶ 15; DSUF ¶ 21; Response to DSUF at ¶ 16.  Defendant

Starnes arrived at the cell in response to the alarm and also discharged his pepper spray through

the cell's food port.  DSUF ¶¶ 22, 23; Response to DSUF at ¶¶ 17, 18.  Before the cell door was

opened, Williams threw a weapon out of the food port.[7]  DSUF ¶ 25.

---

[4]  Plaintiff disputes various portions of DSUF ¶¶ 10 and 14.  However, because the portions
identified here were not addressed, they are deemed undisputed.
[5]  Plaintiff argues that defendant Nielson did not follow policy because he did not review the
complete central files and that he did not review the gang affiliation and enemy information.
Response to DSUF at ¶ 10; ECF No. 111 at 16.  Plaintiff's argument that Nielson did not review
the central files does not create a dispute since Nielson has stated he only reviewed the
administrative segregation files.  As for plaintiff's arguments regarding the gang affiliation and
enemy information, the only evidence he offers to dispute this is his claim that Nielson would not
have approved the cell assignment if he had checked them because there were clear safety
concerns.  Plaintiff has no personal knowledge of what defendant Nielson reviewed and, as
addressed in Section III.F.1., the documentation does not establish the security issues plaintiff
claims and therefore does not support an inference that Nielson did not review that information.
Plaintiff has not put forth any competent evidence that Nielson did not review the gang affiliation
and enemy lists and this fact is therefore deemed undisputed.
[6]  Plaintiff disputes that Gam escorted Williams *directly* to his cell, but not that Gam conducted
the escort.  Response to DSUF at ¶ 11.  This portion of DSUF ¶ 15 is therefore undisputed.
[7]  Plaintiff does not address this fact and it is therefore deemed undisputed.

At some point after defendant Starnes discharged his pepper spray, Williams stopped his assault of plaintiff.  DSUF ¶ 24; Response to DSUF at ¶ 19.  Williams was placed in handcuffs and plaintiff was ultimately escorted to the Treatment and Triage Area (TTA).  DSUF ¶¶ 26, 27, 29; Response to DSUF at ¶¶ 20, 22.  While plaintiff was being escorted, a weapon was found on him and he was charged with a rules violation.[8]  DSUF ¶ 28; Response to DSUF at ¶ 21.  Plaintiff is no longer in CDCR custody.  DSUF ¶ 31; ECF No. 97.

F.   Discussion

1.   Defendant Nielson

Plaintiff alleges that defendant Nielson approved Williams being housed with plaintiff "[e]ven though inmate Williams is deemed a[n] 'obvious' danger to others in the general population."  ECF No. 1 at 4.  He also opines that nearly all of the factors to be considered when assigning cellmates demonstrated that he and Williams were not compatible, which Nielson would have known if he had reviewed both inmates' full central files.  ECF No. 111 at 12-16.  Plaintiff further argues that if Nielson had reviewed the complete central files, which he admitted he did not do, then he would have seen that Williams was in administrative segregation because he was deemed a danger to others and had recently assaulted another inmate who was in the same gang as plaintiff.  Id. at 11-18.

Plaintiff argues that the following case factors show incompatibility between himself and Williams: (1) length of sentence (plaintiff was sentenced to fourteen years, while Williams had a life sentence); (2) victimization history (Williams had recently assaulted an inmate who was part of the same gang as plaintiff); (3) reasons for placement in administrative segregation (plaintiff was in administrative segregation for introducing petty contraband, Williams because he had been in possession of inmate manufactured weapons); (4) history of in-cell assault and/or violence (plaintiff had no history of violence while Williams did); and (5) the nature of their commitment offenses (plaintiff was convicted of robbery and Williams was convicted of murder).  Id. at 13-14.

---

[8]  Plaintiff disputes whether the weapon was his, but admits that it was found in his clothes.  Response to DSUF at ¶ 21.  He does not address whether he received a rules violation and that fact is deemed admitted.

1    However, plaintiff does not offer any evidence as to how the factors are to be weighed or why

2    they demand a finding of incompatibility.  Nor does he establish that he is qualified to offer an

3    opinion as to whether the factors show he and Williams were incompatible.  For example, while

4    documents submitted by plaintiff do show that Williams had recently been charged with being in

5    possession of inmate manufactured weapons and fighting, the weapons charge shows that

6    Williams was double-celled at the time, without any indication of violence toward his cellmate.

7    ECF No. 111-1 at 135-36.  The fighting violation took place on the yard, not in Williams' cell,

8    and the fight was not with Williams' cellmate[9] nor was there any indication that the fight was

9    gang related.  Id. at 141-42.  Plaintiff offers no explanation why these rules violations would

10   demonstrate an inability to double-cell when it appears that Williams had previously been double-

11   celled without incident.

12          Plaintiff also argues that Nielson should have identified the incompatibility because the

13   previous week Williams had assaulted another inmate who was part of the same gang as plaintiff.

14   Id. at 12, 14.  Plaintiff contends this incident should have alerted Nielson to the fact that Williams

15   was a danger to anyone with the same gang affiliation as the inmate he assaulted, including

16   plaintiff.  Id. at 16-17.  However, the rules violation Williams received does not indicate that the

17   incident was gang related (ECF No. 111-1 at 141-45), and plaintiff offers no evidence to establish

18   that inmates who are affiliated with different gangs can never be housed together.  Additionally,

19   defendant Nielson did not approve the housing assignment until after he had received the signed

20   compatibility chrono, which stated that plaintiff and Williams agreed that they were compatible.

21   ECF No. 100-1 at 10; ECF No. 102-1 at 2; ECF No. 104, ¶ 3.  Though plaintiff argues that he was

22   threatened with disciplinary action if he did not sign the chrono (ECF No. 111 at 15-16), there is

23   no evidence that defendant Nielson had reason to believe plaintiff's consent to housing with

24   Williams was anything but voluntary.

25   ////

26   _____

27   [9]  Plaintiff has also submitted a declaration from another inmate stating that inmate Arnold, the
     inmate plaintiff alleges assisted Williams during the fight, was Williams' cellmate.  ECF No. 111-
28   1 at 10.  Evidence that Williams' former cellmate was an accomplice rather than a victim does not
     support plaintiff's argument here.

1    Finally, plaintiff argues that policy specifies that double-cell assignments in administrative

2    segregation are to be determined based upon a review of the inmates' central or "C-files" (ECF

3    No. 111-1 at 247, Department Operations Manual (DOM) § 54046.7.1, effective April 23, 2009)

4    and defendant Nielson has stated that he reviewed the inmates' "administrative segregation files"

5    (ECF No. 104 at ¶ 5).  Since defendants offer no explanation as to whether or how an inmate's

6    administrative segregation file differs from his central file, the court cannot find that Nielson

7    properly followed the procedures for approving a double-cell assignment.  However, while

8    "[f]ailure to follow prison procedures, which called for doing so before making a housing

9    decision, was certainly negligent; . . . negligence, or failure to avoid a significant risk that should

10   be perceived but wasn't, 'cannot be condemned as the infliction of punishment.'"  Estate of Ford

11   v. Ramirez-Palmer, 301 F.3d 1043, 1052 (9th Cir. 2002) (quoting Farmer, 511 U.S. at 838).  In

12   light of the signed compatibility chrono which stated that both inmates agreed to the housing

13   assignment, the court cannot find that Nielson's failure to review their complete central files was

14   anything more than negligent.

15       At a minimum, defendant Nielson reviewed plaintiff's and Williams' gang affiliations and

16   enemy lists, which plaintiff argues should have precluded them being housed together.  However,

17   plaintiff has not shown that the fact that he and Williams were in different gangs demonstrated

18   that housing him with Williams posed a substantial risk of serious harm to his safety.  Nor does

19   plaintiff establish that any of the other factors necessarily demonstrate incompatibility.  Even if

20   defendant Nielson failed to review the inmates' complete central files, that failure, in light of the

21   signed compatibility chrono, does not establish anything more than negligence, which is

22   insufficient to support a claim for deliberate indifference.  For these reasons, defendant Nielson is

23   entitled to summary judgment.

24       2.  Defendant Virga

25       In the complaint, plaintiff alleges that defendant Virga, as the Warden at CSP-Sac, failed

26   to adequately train defendants Gam and Starnes in the mandatory search procedures for high risk

27   ////

28   ////

11

1  security units.[10]  ECF No. 1 at 3.  Plaintiff specifically alleges that policy required defendants

2  Gam and Starnes to search Williams, Williams' property, and plaintiff's cell before placing

3  Williams in plaintiff's cell, and that defendant Virga's failure to provide proper training on this

4  policy resulted in plaintiff's assault.  Id.  Under his claim for relief, plaintiff makes reference to

5  policies related to double-celling.  Id. at 8.  It appears that he was attempting to allege that Virga

6  was responsible for implementing deficient policies.  Id.

7      In the motion before the court, defendant Virga does not move for summary judgment on

8  either of these grounds and instead argues that he is entitled to summary judgment because he

9  was not personally involved in approving the cell assignment or escorting Williams to Gray's

10  cell.  ECF No. 100-1 at 8-9, 12.  The complaint does not make any claim that Virga was

11  personally involved in the cell move, and whether Virga was personally involved in the cell move

12  is irrelevant to the Eighth Amendment claims based on implementation of a deficient policy and a

13  failure to train.

14      "With limited exceptions . . . a district court may not grant summary judgment on a claim

15  when the party has not requested it."  Kelly v. Arriba Soft Corp., 336 F.3d 811, 822 (9th Cir.

16  2002).

17  
18  
19  
20  
21  
22  
23  

> A district court may grant a summary judgment motion "on grounds not raised by a party" only "[a]fter giving [the nonmovant] notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(2).  Only "if the moving party placed the nonmovant party on proper notice" can the latter fairly "be held to have failed to satisfy its duty . . . to designate specific facts showing that there is a genuine issue for trial."  Katz v. Children's Hosp. of Orange Cnty., 28 F.3d 1520, 1534 (9th Cir. 1994).  "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment."  Norse v. City of Santa Cruz, 629 F.3d 966, 972 (9th Cir. 2010) (en banc).

24  Davis v. Patel, 506 F. App'x 677, 678 (9th Cir. 2013) (alteration in original).  Defendants'

25  

26  
27  
28  
_____

[10]  To the extent that plaintiff's opposition to the motion for summary judgment may have been trying to assert new claims related to defendant Virga's alleged participation in his classification hearing, such new claims are not properly before the court.  Plaintiff has not moved to amend the complaint nor submitted a proposed amended complaint.  Plaintiff's new allegations will be disregarded because they are immaterial to resolution of the motion for summary judgment.

1    "cursory mention that they were moving 'on all claims' did not suffice to alert [plaintiff], a pro se

2    litigant, that they sought summary judgment on [a specific] claim when they neither mentioned

3    that claim specifically nor presented any argument on it."  Wilkins v. County of Alameda, 571 F.

4    App'x 621, 624 (9th Cir. 2014).

5         Defendants have requested summary judgment on the ground that defendant Virga was

6    not personally involved in approving the cell assignment or escorting Williams to Gray's cell,

7    which plaintiff did not claim, and they have not moved for summary judgment on the claims that

8    plaintiff did make against Virga.  The motion for summary judgment will therefore be denied as

9    to defendant Virga, with one exception.  Plaintiff's claim for injunctive relief against Virga, in the

10   form of policy modification, is now moot.  Virga is therefore entitled to summary judgment on

11   that claim.

12        "An inmate's release from prison while his claims are pending generally will moot any

13   claims for injunctive relief relating to the prison's policies unless the suit has been certified as a

14   class action."  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (citations omitted).  A plaintiff

15   may proceed on a claim that is otherwise mooted if "(1) the challenged action is too short in

16   duration to be fully litigated prior to its expiration and (2) there is a reasonable expectation that

17   the injury will occur again."  Id. (citing Weinstein v. Bradford, 423 U.S. 147, 149 (1975)).

18   Plaintiff is no longer in CDCR custody and there is no "reasonable expectation that the injury will

19   occur again," so any claims he has for injunctive relief are moot.

20        3.  Defendants Gam and Starnes

21        In the complaint, plaintiff alleges that defendants Gam and Starnes failed to (1) conduct

22   body searches of plaintiff and Williams, (2) search their personal property, or (3) search

23   plaintiff's cell prior to housing the two together.  ECF No. 1 at 4.  He further alleges that after

24   Williams was placed in the cell and had his handcuffs removed, he began stabbing plaintiff and

25   defendants then proceeded to use their chemical spray on plaintiff rather than Williams and then

26   took no further action.  Id.

27        Defendants argue that they were not deliberately indifferent to plaintiff's safety because

28   they were not aware that Williams posed a threat to plaintiff.  ECF No. 100-1 at 10-12.  Gam

13

1   asserts that he did not regularly work as a floor officer where plaintiff was housed and so was

2   unfamiliar with Williams and plaintiff.  Id. at 10-11.  He further argues that when he escorted

3   Williams to plaintiff's cell, he conducted a visual search of Williams, who was wearing boxers

4   and an undershirt, and had no reason to believe he had a weapon on him.  Id. at 11; ECF No. 113

5   at 4, ¶ 15.  He also states that the use of pepper spray is recommended by policy when it is

6   necessary to use force on inmates who are in their cells.  ECF No. 100-1 at 11.  Starnes claims

7   that although he was a regular floor officer in the building, he was not aware of any incidents

8   between the two that would indicate Williams was a danger to plaintiff.  Id. at 12.  He also argues

9   that when plaintiff and Williams signed the compatibility chrono, neither objected to being

10   housed together or raised any security concerns.  Id.  He also asserts that his use of pepper spray

11   was in accordance with policy.  Id.

12       In opposing the motion for summary judgment, plaintiff provides a declaration in which

13   he states that both Starnes and Gam came to advise him that he would be housed with inmate

14   Williams.  ECF No. 111-1 at 3, ¶ 10.  He alleges that he told them "I don't want to cellup with

15   inmate Williams, as you already know we don't get alone [sic].  Why are you trying to cell me up

16   with somebody you know always talking about how he is going to kill me?"  Id.  He claims

17   Starnes proceeded to threaten him with a rules violation, and that he signed the chrono because he

18   did not want another violation since it would increase his release date and require him to serve a

19   term in the SHU.  Id. at 4, ¶ 11; ECF No. 111.  Plaintiff also submits a declaration from inmate

20   Potts, who declares under penalty of perjury that he witnessed inmate Williams threaten plaintiff

21   in front of defendant Starnes[11] and that he later witnessed Starnes tell Williams that he would

22   have a chance to "give [plaintiff] his discipline."  ECF No. 111-1 at 10-11.

23       Plaintiff's claim that defendants Gam and Starnes failed to conduct mandatory searches

24   prior to housing him with Williams does not establish that defendants were deliberately

25   indifferent to his safety because the policies do not actually mandate searches in the ASU

26   ───────────────

27   [11]  Defendants object to paragraphs 2 and 3 of inmate Potts' declaration as containing
     inadmissible hearsay.  ECF No. 114.  This objection is overruled to the extent the statements are
     used to prove that Starnes was aware of threats being made against plaintiff rather than to the

28   veracity of the threats themselves.

1    whenever a cell change occurs.  Moreover, even if the policies did dictate searches in the manner

2    plaintiff alleges, the failure to follow policy does not constitute a per se constitutional violation,

3    though it can support an inference of deliberate indifference.  However, the allegations that Gam

4    and Starnes were aware that Williams was threatening plaintiff, and that Starnes promised

5    Williams a chance to "give [plaintiff] his discipline," directly contradict Gam's and Starnes'

6    statements that they were unaware that Williams was a threat to plaintiff's safety.

7            Starnes claim that he was not threatening plaintiff when he told him he would receive a

8    rules violation for refusing Williams as a cellmate (ECF No. 112 at 6) also creates a factual

9    dispute.  Although Starnes cites policy which states "inmates shall be . . . subject to disciplinary

10   action and consideration for placement in more restrictive housing for refusing a double-cell

11   housing assignment" (id. quoting ECF No. 111-1 at 245 [DOM § 54046.1]), other evidence on the

12   record, taken in the light most favorable to plaintiff, could support the claim that Starnes

13   threatened him.  Defendants set forth in their statement of facts that "[t]he compatibility chrono

14   provides inmates with the opportunity to refuse a cellmate *or* to provide officers with information

15   as to why they do not believe they can safely house with the new cellmate."  DSUF ¶ 8 (emphasis

16   added).  The use of the disjunctive "or" and the identification of safety issues as a separate option,

17   indicates that raising safety concerns is not the same as refusing a cellmate or double-cell housing

18   assignment.  This more nuanced interpretation of the policy is further supported by defendant

19   Nielson's verified interrogatory response, which states that "[i]nmates do not receive Rules

20   Violation Reports for refusing to sign a compatibility chrono (CDCR form 1802-B).  But if they

21   are housed in a double cell without a cellmate and they continuously refuse to accept *any*

22   cellmate, it is possible that they will receive Rules Violation Report."  ECF No. 111-1 at 94

23   (emphasis added).  In light of these additional facts, a jury could find that plaintiff tried to advise

24   Gam and Starnes that he had a safety issue with Williams and that Starnes improperly threatened

25   to write him up for refusing the housing assignment in order to coerce plaintiff into signing the

26   form.  Since plaintiff alleges that both Gam and Starnes were present when this happened, there is

27   a factual dispute as to whether either defendant could rely on the signed compatibility chrono as

28   evidence that Williams was not a safety risk to plaintiff.

15

1    There are also factual disputes surrounding plaintiff's claim that defendants Gam and

2  Starnes sprayed him with pepper spray and delayed in stopping the assault.  Plaintiff claims that

3  "[n]ot one time did any officer order Williams to stop nor get down.  They just allowed Williams

4  to attack me for at least some minutes, then they started spraying me.  Gam and Starnes did not

5  spray Williams not one time."  ECF No. 111-1 at 5, ¶ 19.  He also claims that Williams continued

6  his assault for "awhile" after both officers discharged their pepper spray.  Id., ¶ 20.  This

7  contradicts defendants' account of the events.  Defendants claim that Gam first ordered plaintiff

8  and Williams to stop fighting and when they ceased to comply he discharged his pepper spray

9  through the cell's food port.  DSUF ¶ 21.  They further assert that when Starnes arrived he

10  ordered plaintiff and Williams to get down and when they ignored his commands he also

11  discharged his pepper spray through the food port and the fight stopped shortly thereafter.  DSUF

12  ¶¶ 22-24.  Although defendants cite to policy that states pepper spray is the preferred option for

13  use of force when inmates are in their cells, they do not provide a copy of the policy which was in

14  effect at the time of the incident.  DSUF ¶ 21.  The copy of the DOM available on the CDCR's

15  website contains the use of force policy as revised on January 12, 2016.[12]  Yet, even if the policy

16  at the time did identify pepper spray as the preferred option for the situation, in light of plaintiff's

17  allegations that defendants did not act immediately, that they only sprayed plaintiff, and that

18  defendant Starnes helped to arrange the assault, a jury could find that the use of pepper spray was

19  intended to further incapacitate plaintiff during the assault by Williams rather than to bring the

20  assault to a stop.

21    The disputes caused by the competing declarations cannot be resolved without credibility

22  determinations, which are the function of the jury, not of a judge on a motion for summary

23  judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Both parties' versions of

24  events are supported by declarations signed under penalty of perjury, and the contents of the

25  declarations are such that the declarants would have personal knowledge of them.  These

26

27  ───────────────────

    [12]  See

28  http://www.cdcr.ca.gov/Regulations/Adult_Operations/docs/DOM/DOM%202016/2016_DOM.P
    DF at 328, 331.

16

1   declarations are therefore sufficient to create material factual disputes as to whether defendants

2   Gam and Starnes were aware that Williams presented a risk to plaintiff's safety, and whether they

3   took proper steps to intervene once the assault began.  Accordingly, summary judgment must be

4   denied.

5             4.  <u>Qualified Immunity</u>

6        "Government officials enjoy qualified immunity from civil damages unless their conduct

7   violates 'clearly established statutory or constitutional rights of which a reasonable person would

8   have known.'"  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (quoting <u>Harlow v.</u>

9   <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity defense, the court must

10   consider the following: (1) whether the alleged facts, taken in the light most favorable to the

11   plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

12   whether the right at issue was clearly established at the time of the incident.  <u>Saucier v. Katz</u>, 533

13   U.S. 194, 201 (2001), <u>overruled in part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009)

14   (overruling <u>Saucier's</u> requirement that the two prongs be decided sequentially).  The Supreme

15   Court has "'repeatedly told courts . . . not to define clearly established law at a high level of

16   generality.'"  <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>Ashcroft v. al-Kidd</u>, 563

17   U.S. 731, 742 (2011)).  "The dispositive question is 'whether the violative nature of *particular*

18   conduct is clearly established.'"  <u>Id.</u> (emphasis in original).  "[T]his inquiry 'must be undertaken

19   in light of the specific context of the case, not as a broad general proposition.'"  <u>Brosseau v.</u>

20   <u>Haugen</u>, 543 U.S. 194, 198 (2004) (quoting <u>Saucier</u>, 533 U.S. at 201).

21        These questions may be addressed in the order most appropriate to "the circumstances in

22   the particular case at hand."  <u>Pearson</u>, 555 U.S. at 236.  Thus, if a court decides that plaintiff's

23   allegations do not support a statutory or constitutional violation, "there is no necessity for further

24   inquiries concerning qualified immunity."  <u>Saucier</u>, 533 U.S. at 201.  On the other hand, if a court

25   determines that the right at issue was not clearly established at the time of the defendant's alleged

26   misconduct, the court need not determine whether plaintiff's allegations support a statutory or

27   constitutional violation.  <u>Pearson</u>, 555 U.S. at 236-242.

28   ////

1                    a. Defendant Nielson

2          Defendant Nielson alternatively argues that he is entitled to qualified immunity because

3   he followed prison procedure and reviewed both inmates' central files before approving plaintiff

4   and Williams to double cell.  ECF No. 100-1 at 14.  However, as addressed above in Section

5   III.F.1, it is not clear that Nielson complied with policy by reviewing the central files.  However,

6   the court finds that despite any failure to comply with prison policy, defendant Nielson would

7   alternatively be entitled to qualified immunity.

8          In Estate of Ford, the Ninth Circuit found that while "Farmer clearly states the general

9   rule that prison officials cannot deliberately disregard a substantial risk of serious harm to an

10  inmate; . . . it is [also] relevant that neither Farmer nor subsequent authorities has fleshed out 'at

11  what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment

12  purposes.'" 301 F.3d at 1050-51 (quoting Farmer, 511 U.S. at 834 n.3).  The Ninth Circuit

13  further held that it was clearly established that if an officer knew that an inmate "was acting out

14  dangerously with cellmates or that he was a threat to [a specific inmate] but housed [that inmate]

15  with him anyway, this would violate the Eighth Amendment." Id. at 1050.  However, the court

16  went on to state that "it would not be clear to a reasonable prison official when the risk of harm

17  from double-celling . . . inmates with one another changes from being a risk of some harm to a

18  substantial risk of serious harm." Id. at 1051 (emphasis in original).  The Ninth Circuit then went

19  on to find the defendants were entitled to qualified immunity because while allowing the inmate

20  who attacked and killed the plaintiff "to be double-celled with [the plaintiff] turned out be quite

21  unfortunate judgments, [the court could not] say that a reasonable correctional officer would have

22  clearly understood that the risk of serious harm was so high that he should not have authorized the

23  double-celling." Id. at 1051.

24         One of the defendants in Estate of Ford was the lieutenant responsible for approving the

25  cell assignment, just as Nielson was here.  In that case, as in this one, the lieutenant did not

26  review the inmates' central files and both inmates had signed a form stating they agreed to the

27  assignment. Id. at 1047, 1052.  It was further alleged that the lieutenant did not look at any

28  documentation and instead relied upon the representation of another officer who stated that he

18

1  knew both inmates, "approved of the request by [the inmates] to be celled together and that he

2  believed [they] were not enemies, did not have a gang-related conflict, and were not a 'predator'

3  and 'victim' combination." Id. at 1052.  The lieutenant was aware that the assailant had attacked

4  another inmate on the yard the previous month, but also knew that the plaintiff had previously

5  been housed with the assailant without incident.  Id. at 1047, 1052.  The Ninth Circuit found that

6  based on this information, the lieutenant "had little reason to think that the [assailant] was

7  excessively dangerous or that he posed any particular danger to [the plaintiff]."  Id. at 1052.  The

8  court further found that even if the lieutenant had reviewed the assailant inmate's central file and

9  discovered his "extensive history of violent behavior and [that he] was being transferred to a

10  higher security prison" this would not have made the lieutenant aware of a substantial risk of

11  serious harm because the records also showed only one incident of aggression toward a cellmate

12  (approximately three weeks prior to being housed with the plaintiff), and that at that time he was

13  off his medications and had since been put back on them.  Id.

14      In this case, Nielson reviewed, at a minimum, plaintiff's and Williams' administrative

15  segregation files which indicated their gang affiliations and known enemies.  ECF No. 104 at ¶¶

16  2, 5.  There is no evidence that either plaintiff's or Williams' files contained information

17  demonstrating that Williams posed a specific threat to plaintiff,[13] that the mere fact that they were

18  in different gangs made them incompatible cellmates, or that Williams had a history of violence

19  towards cellmates.  Additionally, there is no evidence that defendant Nielson was aware of the

20  alleged threats by Williams against plaintiff or that Nielson had reason to think that plaintiff had

21  unwillingly signed the compatibility chrono.  On these facts, it would not have been clear to a

22  reasonable lieutenant, even one that had reviewed both inmates' entire central files, that housing

23  Williams and plaintiff together would pose a substantial risk of serious harm to plaintiff.

24  Defendant Nielson is therefore alternatively entitled to qualified immunity.

25           b.  Defendants Gam and Starnes

26      "[S]ummary judgment based on qualified immunity is improper if, under the plaintiff's

27  _____

28  [13]  The enemy list submitted by plaintiff shows that Williams was added as an enemy after the
    incident at issue in this case.  ECF No. 111-1 at 389.

1     version of the facts, and in light of the clearly established law, a reasonable officer could not have

2     believed his conduct was lawful." <u>Schwenk v. Hartford</u>, 204 F.3d 1187, 1196 (9th Cir. 2000)

3     (citing <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1208 (9th Cir. 1994)).  At the time of the

4     incident, it was clearly established that if an officer *knew* that an inmate "was acting out

5     dangerously with cellmates or that he was a threat to [a specific inmate] but housed [that inmate]

6     with him anyway, this would violate the Eighth Amendment." <u>Estate of Ford</u>, 301 F.3d at 1050.

7     Under plaintiff's version of the facts, defendants Gam and Starnes were aware that Williams was

8     threatening to kill plaintiff and therefore knew that he was a threat to plaintiff, but housed them

9     together anyway.  The factual disputes involving Gam's and Starnes's knowledge that Williams

10     was threatening plaintiff preclude finding that they are entitled to qualified immunity, because a

11     reasonable officer would not have believed that it was lawful to double-cell plaintiff with an

12     inmate who was threatening him.

13         G.   <u>Summary</u>

14         The motion for summary judgment should be granted as to defendant Nielson and as to

15     the request for injunctive relief against defendant Virga.  The motion should be denied as to

16     defendants Gam and Starnes and the claims against Virga for damages.

17         As to defendant Nielson, the motion should be granted because plaintiff has not shown

18     that Nielson was aware of a significant risk to plaintiff's safety.  Because Nielson saw the signed

19     compatibility chrono and had no reason to think plaintiff had been forced to sign the form, his

20     failure to review the complete central files was no more than negligent.  Alternatively, the motion

21     should be granted because Nielson is entitled to qualified immunity because it was not clear that

22     the decision to house plaintiff and Williams together put plaintiff at substantial risk of serious

23     harm.

24         The request for defendant Virga to make policy changes is moot because plaintiff is no

25     longer in CDCR custody.  Therefore Virga is entitled to summary judgment on the claim for

26     injunctive relief.  The motion should otherwise be denied as to Virga because Virga did not ask

27     for summary judgment on the claim that plaintiff actually made against him.  The motion should

28     be denied as to defendants Gam and Starnes because there are material factual disputes regarding

1   whether they knew Williams was threatening plaintiff and whether they properly acted to stop the

2   assault.

3                                          CONCLUSION

4          IT IS HEREBY ORDERED that the September 28, 2016 order to show cause and findings

5   and recommendations (ECF No. 116) are vacated.

6          IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment

7   (ECF No. 100) be granted in part and denied in part as follows:

8                  a.  Granted as to defendant Nielson;

9                  b.  Granted as to the request for injunctive relief against defendant Virga and

10  denied in all other respects as to Virga;

11                 c.  Denied as to defendants Gam and Starnes.

12         These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17  objections shall be served and filed within fourteen days after service of the objections.  The

18  parties are advised that failure to file objections within the specified time may waive the right to

19  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: January 12, 2017

21

22                                          ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28